IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

RAYMOND GIPSON                                                                                          PLAINTIFF

v.                                            NO. 5:08CV00023 JLH

HEADWATERS RESOURCES, INC.                                                              DEFENDANT

**OPINION AND ORDER**

Raymond Gipson, an African-American, filed this action against Headwaters Resources, Inc., alleging that Headwaters violated Title VII, the Arkansas Civil Rights Act of 1993, and 42 U.S.C. § 1981 by engaging in racial discrimination against him in employment. Headwaters filed a motion for summary judgment, arguing that it had a legitimate, non-discriminatory reason for its conduct. For the following reasons, summary judgment is granted in part and denied in part.

**I.**

A court should enter summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. If the moving party meets this burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue*

*for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting FED. R. CIV. P. 56(e)).  A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.  In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences. *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases).  *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

## II.

Raymond Gipson began working at the White Bluff Facility of Headwaters Resources, Inc., on August 19, 2004.  The primary work done at the White Bluff Facility is the disposal of fly ash, a powdery by-product of burning coal.  Gipson was hired by Shon Traylor, the Plant Manager, who remained his supervisor during the course of his employment.  Gipson's employment was terminated after he refused an order from Traylor to dispose of some fly ash.  Gipson contends that his termination was an act of racial discrimination.

Gipson and Greg Kilcrease were the plant Operators, and their primary job duty was the disposal of fly ash.  Gipson's other co-workers included Tom Bombino (Lead Operator), Kevin Smith (Construction Superintendent), Chester Threlkeld, and Norman Brixey (Senior Operator).  Gipson has testified that his job duties involved doing whatever he was told to do by Traylor, including loading trucks and disposing of fly ash.

Gipson says that the truck to which he was assigned did not have air conditioning and the trucks assigned to Caucasians had assisting devices that his did not. He also says that Headwaters's mechanic refused to repair his truck even after Traylor had instructed him to make the repairs. According to Gipson, Bombino, Threlkeld, and Kilcrease – all Caucasian – have refused Traylor's orders at some point but received no discipline as a result. Twice in two days Bombino refused Traylor's instruction to move a water canon, with no disciplinary repercussion. On other occasions, Bombino refused a supervisor's instruction to help Gipson at the land fill and Traylor's order to help clean a silo. Bombino also continued playing on the company computer after being told not to do so, refused to perform his scheduled cleaning of the yard, refused to clean bottom ash, failed to help clean and paint the maintenance shop, and refused to train Gipson to drive trucks. In each case, Gipson says that Traylor failed to discipline Bombino. Threlkeld also refused to train Gipson on driving trucks and to follow Traylor's order to help Gipson dispose of fly ash. Finally, Kilcrease refused an order to help Gipson clean the silo, flipped over a trash can in anger without cleaning it up, and did not clean up his truck as instructed. According to Gipson, neither Threlkeld nor Kilcrease was disciplined as a result of his refusal. Headwaters has no disciplinary records relating to Bombino, Threlkeld, or Kilcrease.

Gipson alleges that Headwaters paid him less than Caucasian employees – specifically, Bombino, Threlkeld, and Brixey – because of his race. Gipson has admitted that those employees were in different positions and had worked at Headwaters longer than he. Gipson has also admitted that he has no personal knowledge of any facts showing that he was paid less because of his race. Moreover, Gipson has testified that he had no knowledge of any fact indicating that the alleged delay

in his truck repairs was because of his race, and he does not dispute that he was trained in everything necessary to keep his job.

Headwaters's daily disposal records indicate that Gipson did not dispose any loads of fly ash during the three days leading up to the end of his employment with Headwaters. Gipson says that he took at least one vacation day in order to go through the application procedure for a position at International Paper Mill in Pine Bluff. During that same period of time, Headwaters's records indicate that Kilcrease had disposed of eighty-four loads of fly ash. On September 28, 2006, Kilcrease said he was suffering from a neck injury. He had been disposing of fly ash for the previous several days. Gipson says that he had been helping Kilcrease dispose of his fly ash loads during that time. Kilcrease says that he asked Gipson to help him dispose his fly ash loads. Traylor, Gipson's supervisor, instructed him to help Kilcrease with the disposal of his fly ash loads. Gipson refused, stating that it was not part of his job duties to dispose of Kilcrease's fly ash loads. Traylor informed Gipson that if he did not help as asked, Traylor could terminate his employment. Gipson says that Caucasian employees routinely refused to do tasks assigned by Traylor, and that Traylor did not discipline those employees. Traylor says he then told Gipson he could do his job or clock out. Gipson asserts that Traylor told him he had to do that job or turn in his badge and clock out, that he told Traylor he would not do another man's job, and that Traylor then ordered him to hand over his badge and clock out. Gipson handed his badge to Traylor, clocked out, and did not return to work for Headwaters. Gipson later commenced this action against Headwaters, alleging disparate treatment.

### III.

Where there is no direct evidence of discrimination, this Court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). A plaintiff must first establish a prima facie case of discrimination by presenting evidence of four elements: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616 (8th Cir. 2007) (quoting *Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005)). If the plaintiff is able to establish a prima facie case,

> the burden of production shifts at the second stage to the defendant, who must articulate some legitimate, nondiscriminatory reason for the adverse employment action. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted and "drops from the case." The burden then shifts back at the third and final stage to the plaintiff, who is given the opportunity to show that the employer's proffered reason was merely a pretext for discrimination. The plaintiff retains at all times the ultimate burden of persuading the trier of fact that the adverse employment action was motivated by intentional discrimination.

*Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1332 (8th Cir. 1996) (citations omitted). Claims under the Arkansas Civil Rights Act are analyzed in the same manner as Title VII claims. *Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 (8th Cir. 2000).

**A.    Prima Facie Case**

Initially, Gipson must show a prima facie case by presenting evidence of the four elements essential to a charge of racial discrimination and disparate treatment. The proof necessary to establish a prima facie case is not inflexible and will vary with the facts of each case. *Young v. Warner-Jenkinson Co., Inc.*, 152 F.3d 1018, 1022 (8th Cir. 1998) (citing *Hindman v. Transkrit*

*Corp.*, 145 F.3d 986, 990-91 (8th Cir. 1998)).  The threshold of proof necessary for a prima facie case is minimal, and the burden is not onerous.  *Id.* (citing *Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 944 (8th Cir. 1994); *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir. 1995)).  Headwaters does not dispute the first element but does dispute Gipson's claims regarding the remaining three elements.

First, Headwaters argues that Gipson was not meeting its legitimate job expectations because he refused to comply with Traylor's order to assist Kilcrease.  In response, Gipson argues that it was not part of his job duties to do another employee's job.  According to Gipson, Traylor was ordering him to do Kilcrease's job, even though Gipson says that he had helped Kilcrease with his job over the previous several days.  Gipson then told Traylor that he would not do another man's job.  Furthermore, Gipson asserts that other similarly-situated employees regularly refused to comply with Traylor's orders, and thus his refusal to assist Kilcrease was not a failure to meet Headwaters's job expectations.  Gipson has testified to several incidents in which white employees refused to obey Traylor's orders, without repercussion.  Thus, Gipson has presented evidence on this element of his prima facie case.

Second, Headwaters contends that Gipson did not suffer an adverse employment action.  After refusing to assist Kilcrease, Traylor says he told Gipson that he could either do his job or turn in his badge and clock out.  Gipson says that after he told Traylor he would not do another man's job Traylor told him to turn in his badge and clock out, essentially terminating his employment with Headwaters.  Gipson's testimony is evidence that Traylor terminated his employment, which is an adverse employment action.

Finally, Headwaters argues that similarly situated employees outside of Gipson's protected class were not treated differently. Gipson argues that he was paid less than and segregated from similarly situated employees because of his race. Gipson has provided no evidence that he was segregated from other employees because of his race, and he admits that other employees were paid more because they had worked at Headwaters longer. He admitted in his deposition that he had no knowledge of any facts to show that he was paid less because of his race. Gipson also claims disparate treatment in his work schedule, work assignments, training, computer use, and the repairs made to his truck. However, he has not presented evidence showing that the requirements of his work schedule were substantially different than white employees. He stated in his deposition that his work assignments correlated to his job duties and that he received the proper training to keep his job. He has presented no evidence to show that any delay in repairs to his truck was due to his race, and he stated that he neither used nor requested to use the company computer. Therefore, Gipson fails to make out a prima facie case of disparate treatment on the aforementioned claims, and summary judgment is granted in favor of Headwaters on those claims.

On the issue of whether Traylor's discipline of Gipson constituted disparate treatment, however, Gipson has successfully made out a prima facie case. At the prima facie stage, the threshold is low for determining whether employees are similarly situated. *Rodgers v. U.S. Bank*, 417 F.3d 845, 851-52 (8th Cir. 2005) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). To meet this low threshold, a plaintiff must merely show that employees "are involved in or accused of the same or similar conduct and are disciplined in different ways." *Id.* at 851. Headwaters argues that Gipson is not similarly situated because his refusal was with respect to his primary job duty – disposing fly ash – whereas the other employees'

7

refusals were not in relation to primary job duties. Gipson counters that Traylor asked him to do Kilcrease's job for him, which was not one of his primary job duties. Furthermore, Headwaters has offered no evidence that it had a policy or practice of disciplining employees differently based on whether they refused supervisory orders relating to secondary, as opposed to primary, job duties. For purposes of discipline, a reasonable jury could find the other Headwaters employees under Traylor's supervision were similarly situated to Gipson. Thus, Gipson has presented evidence that Headwaters, through the actions of Traylor, disciplined him differently from other similarly situated employees when they refused Traylor's orders.

**B.     Legitimate, Non-discriminatory Reason**

Because Gipson has presented evidence on all four elements of a prima facie case regarding his discipline and alleged termination, the burden then shifts to Headwaters to provide a legitimate, non-discriminatory reason for the adverse employment action taken against Gipson. *See Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 919 (8th Cir. 2000). Headwaters states that its legitimate, non-discriminatory reason for the end of Gipson's employment is that he quit or, in the alternative, that he was insubordinate to Traylor. Headwaters argues that Gipson refused to follow Traylor's orders and was given the option of following those orders or clocking out. Because Gipson chose to clock out, Headwaters asserts that he freely chose to terminate his employment. In the alternative, Headwaters argues that Gipson was effectively terminated because he was insubordinate to his supervisor. Headwaters has provided evidence of a legitimate, non-discriminatory reason for the end of Gipson's employment.

**C.     Evidence of Pretext**

The burden now shifts to Gipson to show that Headwaters's stated legitimate, non-discriminatory reason for the end of his employment is a mere pretext for racial discrimination. *Rodgers*, 417 F.3d at 853.  At the pretext level of analysis, the test for determining whether other Headwaters employees were similarly situated to Gipson is a rigorous one.  *See id.* (citing *Wheeler v. Aventis Pharm.*, 360 F.3d 853, 857 (8th Cir. 2004)).  Gipson has the burden of proving that the compared employees were similarly situated to him in all relevant aspects.  *Smith v. Allen Health Sys.*, 302 F.3d 827, 835 (8th Cir. 2002).  The elements of Gipson's prima facie case remain, and if he provides evidence of pretext and disbelief of Headwaters's proffered explanation, then he has created a question of fact for a jury.  *Young v. Warner-Jenkinson Co., Inc.*, 152 F.3d 1018, 1023 (8th Cir. 1998).

Gipson argues that he is similarly situated to the other Headwaters employees with respect to disciplinary actions by the supervisor, Traylor.  To be relevant at the pretext level, the conduct of more leniently disciplined employees must be comparably serious to that of Gipson.  *Rodgers*, 417 F.3d at 853.  In *Rodgers*, the plaintiff violated her employer's policy by processing transactions on her own account nine times in ten days, resulting in a large amount of money being credited to her account.  *Id.* at 854.  Rodgers asserted that she was similarly situated to another employee who only had one similar violation for a relatively small amount of money.  *Id.*  The court held that Rodgers was not similarly situated because their violations were not of "comparable seriousness."  *Id.*  In *Kientzy v. McDonnell Douglas Corp.*, 990 F.2d 1051, 1054-55 (8th Cir. 1993), the plaintiff, a female, would occasionally go home for lunch while out on building runs.  Instead of reporting the infraction to his immediate supervisor, the employee's supervisor reported her infraction directly to

the investigations department. *Id.* at 1055.  The plaintiff presented evidence that her supervisor never disciplined male employees and never investigated rumors that male employees also went home while making building runs. *Id.* at 1060.  Therefore, the court held that the plaintiff was treated differently than similarly situated male employees, who were either recommended for less severe discipline or were not disciplined at all. *Id.*

Gipson argues that Caucasian employees disregarded Traylor's orders on several different occasions and Traylor never disciplined them for their insubordination.  Gipson says that Bombino refused Traylor's orders to move a water canon, help Gipson at the land fill, clean a silo, perform his scheduled cleaning of the yard, clean bottom ash, and help clean and paint the maintenance shop.  Threlkeld also refused Traylor's orders to help Gipson dispose of fly ash.  Finally, Kilcrease failed to follow Traylor's instructions to clean the silo, clean up trash after having flipped a trash can, and clean up his truck.  In each case, Gipson says that Traylor failed to discipline the Caucasian employees for refusing to follow his orders.  Gipson says he is similarly situated to Bombino, Threlkeld, and Kilcrease in the relevant aspect of disciplinary action for refusing to follow a supervisor's order.

Headwaters counters that Gipson is not similarly situated because he refused an order relating to his primary job duty, disposing fly ash, whereas the other employees refused orders relating only to secondary job duties.  However, as noted above, Headwaters has provided no evidence of a policy or practice indicating that disciplinary measures for failure to follow a supervisory order differ depending on whether the order related to a primary or secondary job duty.  In fact, in support of its argument that Gipson was insubordinate, Headwaters offers Gipson's testimony that it was part of his job to do whatever Traylor asked him to do.  Headwaters has provided no evidence that certain

orders of Traylor could be ignored without penalty, whereas other orders must be followed without question. In this relevant aspect, Gipson is similarly situated to the other employees under Traylor's supervision.

Headwaters also argues that this Court should view the evidence with a strong inference of no discrimination because of the same-actor presumption, wherein it is presumed unlikely that the same supervisor who hires a person with minority status would then terminate that person within a short period of time because of his minority status. *Herr v. Airborne Freight Corp.*, 130 F.3d 359, 362-63 (8th Cir. 1997); *Lowe v. J.B. Hunt Transport, Inc.*, 963 F.2d 173, 174-75 (8th Cir. 1992). In *Herr*, the plaintiff was unable to overcome the same-actor presumption because her allegations were not accompanied by supporting evidence. *Herr*, 130 F.3d at 363. Although there may be a strong inference that Traylor would not terminate an African-American whom he hired merely because he was African-American, Gipson has offered evidence of several occasions in which Caucasian employees were similarly insubordinate but received no discipline. At the summary judgment stage, Gipson's evidence is sufficient to create an issue for trial as to whether he was disciplined because of his race.

Like the plaintiff in *Kientzy*, Gipson has shown a pattern of failing to follow company orders and evidence of inconsistent disciplinary action. Although this Court will not sit as a super-personnel department reviewing Traylor's business judgments, *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995), certainly Traylor's failure to discipline Caucasian employees for similar infractions – failure to follow his orders – could allow a reasonable jury to conclude that Traylor intentionally discriminated against Gipson. Headwaters has provided no company policy distinguishing between orders relating to a primary job duty and other legitimate orders from a

supervisor. Therefore, Gipson has met his burden of showing that he was similarly situated in all relevant aspects to other Headwaters employees under Traylor's supervision for purposes of disciplinary action, and he has offered evidence of disparate treatment that conflicts with Headwaters's proffered legitimate, non-discriminatory reason for the termination of his employment. Gipson has offered other circumstantial evidence of racial discrimination. Of the four African-Americans who worked with Gipson at Headwaters, three were terminated – two for insubordination. Although Gipson has offered evidence of insubordination on the part of Caucasian employees, Headwaters has no disciplinary record for the five Caucasian employees who worked there with Gipson. Gipson has thus created a genuine question of fact on the issue of whether Headwaters's stated reason is a mere pretext to hide Traylor's discriminatory intent in disciplining Gipson differently from other Caucasian employees.

## CONCLUSION

Summary judgment is therefore GRANTED on Gipson's claims of disparate treatment with respect to pay, work schedule, work assignments, training, computer use, and the repairs made to his truck. Headwaters's motion for summary judgment is DENIED with respect to Gipson's claim of disparate treatment with respect to Traylor's disciplinary measures. Document #16.

IT IS SO ORDERED this 3rd day of November, 2008.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE